Matter of Miguel RR. v Banesa GG. (2023 NY Slip Op 23432)

[*1]

Matter of Miguel RR. v Banesa GG.

2023 NY Slip Op 23432

Decided on November 21, 2023

Family Court, Sullivan County

Ricciani, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on November 21, 2023
Family Court, Sullivan County

In the Matter of the Custody/Visitation Proceeding of Miguel RR., Petitioner,

against
Banesa GG., Respondent.

V-00285-23

Michele Lee Neusch, Esq.
Attorney for the Petitioner
Timothy Burke, Esq.
Attorney for the Respondent 
Patti Leibowitz, Esq.
Attorney for the Children

Jacqueline Ricciani, J.

Procedural History and Background
On February 23, 2023, the Petitioner, Miguel RR. (hereinafter the Father), filed for a writ of habeas corpus and a petition for custody against the Respondent, his wife, Banesa GG. (hereinafter the Mother), concerning their minor daughter, Isabella RR., born in 2016. The petitions allege, in sum and substance, that on or about April 12, 2022, the Mother, acting without the knowledge or consent of the Father, left the marital residence with their child and went to the State of Florida. The Father seeks an order awarding him custody of the child.
On March 23, 2023, the parties appeared at the Sullivan County Family Court, in person, for [*2]the arraignment on the petitions. It was undisputed that at the time of the filing of the petitions, the child had been present in the State of Florida in excess of six months and would therefore presumptively be a resident of the State of Florida for the purposes of an initial custody determination (see DRL [FN1]
 § 76; see also FSA [FN2]
§ 61.514). The Father contends, however, that the child was wrongfully removed from the State of New York, and therefore, was still a resident of the State of New York such that this Court should assert jurisdiction. 
On July 11, 2023, the Father filed a motion for the Court to assume subject matter jurisdiction, or in the alternative, to conduct an evidentiary hearing to resolve the issue. The Father's motion papers allege, in sum and substance, that on April 12, 2022, the Mother took the subject child from the marital residence to the State of Florida. Thereafter, the parties remained in regular communication by phone over a period of several months, and continually discussed the Mother's plans to return to the State of New York with the child, which she never did. It is the Father's position that the child was wrongfully removed and wrongfully retained outside of the State of New York. Thus, any period of wrongful removal would not be includable in the six month residency requirement of DRL § 75-a(7), and would be deemed a temporary absence for the purpose of determining the child's home state (e.g. Matter of Felty v. Felty, 66 AD3d 64 [2d Dept., 2009]).
The Mother's Affidavit in Opposition, sworn to on August 1, 2023, disputes many of the Father's factual allegations and disputes that there was any intent to deceive him. In her affidavit, the Mother states that when she left New York, it was to visit relatives during the child's spring break from school. She then asserts that "conditions, circumstances and opportunities that developed dictated that we'd not be returning," and that "it became clear to [the Father] long before his statutory time to bring a proceeding in New York had expired that I'd not be returning." The Mother takes the position that the child is a resident of the State of Florida for the purpose of an initial custody determination under the UCCJEA [FN3]
and that the State of Florida properly has jurisdiction.[FN4]

The motion papers raise issues of fact regarding the circumstances of the Mother's departure and continued absence from the State of New York with the child, and the Father's knowledge of her decision to remain in Florida. An evidentiary hearing was commenced on August 24, 2023, and concluded on November 21, 2023, to resolve these factual disputes and to determine whether this Court must exercise subject matter jurisdiction over this initial custody determination.
Findings of Fact
Petitioner's Proof
The Petitioner testified that he and the Mother are legally married and that Isabella is their only child in common. The parties resided together as an intact family from before the child's birth [*3]in 2016 until April of 2022, when he returned home from work to find the Mother and children were not there. [FN5]
The Father called the Mother many times that day, but she did not answer her phone. According to the Father, the Mother never told him of her plans to leave New York or take the child with her, and he denied that she took the child on vacation every year during spring break. 
The following day, he called the maternal grandmother and learned, for the first time, that the Mother and child were in the State of Florida. Two days later, the Mother returned his calls. During that conversation, the Father spoke with the child, and the Mother told him that she was on vacation and would be returning before school started in New York. He did not ask her where they were vacationing, and she did not volunteer this information. Thereafter, the parties remained in regular contact by telephone and the Father had contact with the child on a weekly basis. From April of 2022 until August of 2022, the Mother continually promised that she would return to the State of New York with the child before school began. The Father did not take any actions to hasten their return because he believed his wife.
In September of 2022, the Mother was in the State of New York and the parties met in person in Middletown, New York. The Mother did not have the child with her at that time. She informed the Father that the child would be attending school in the State of Florida for a time but would return to New York "for good" by Thanksgiving. The parties were still in regular contact at this time, and the Petitioner continued to have regular contact with the child on at least a weekly basis.
The Mother did not return to the State of New York with the child for the Thanksgiving holiday and told the Father that she would return with the child for the Christmas holiday. The Father testified that he was not suspicious as to why it was taking so long for the Mother to bring the child home because he believed his wife and because she had left with the child in 2017 for approximately eight months before they returned home. In addition, the Mother never explicitly told him that she was not bringing the child back to New York.
In December of 2022, the child was not returned to the State of New York. In conversations with the Father, the Mother claimed that she was having difficulty getting reservations to travel and would be returning the child in January. On or about January 5, 2023, the parties spoke by telephone and the Father learned that the Mother was pregnant by another man. He also learned that the Mother had returned her two other children to their father following a court proceeding. After those revelations, he no longer believed that the Mother would return to New York with their child and obtained counsel to commence the instant proceedings. At the conclusion of his testimony, the Petitioner rested.
Motion For Directed Verdict
The Respondent-Mother moved for a directed verdict, in accordance with CPLR § 4401, on the grounds that the Father did not act reasonably under the circumstances or make sufficient efforts to locate his wife and child. Because he failed to do so in a timely manner, he cannot seek to have a New York Court assert subject matter jurisdiction and his petitions should be dismissed. The Court afforded all counsel the opportunity to brief this issue and reserved decision. After reviewing the record and counsel's submissions, the application is denied for the following reasons.
The Mother's argument, in sum and substance, is that the Father knew that she and the child had relocated to the State of Florida and would not be returning. According to the Mother, despite [*4]her representations that she would return with the child at a point in the future, a reasonable person would have known that this was not the case based upon her other conduct.[FN6]
 Significantly, the Mother does not state when, between April 2022 and February 23, 2023, a reasonable person would have realized that she had relocated permanently to the State of Florida and would not return. Nonetheless, the Mother has not presented any authority to support the proposition that the determination of when a child is no longer temporarily absent from the home state is based upon a reasonable person standard or that a parent's failure to disbelieve the other parent and search for their child results in the original home state losing jurisdiction. 
Even if the Father should have known in September 2022 that the Mother and child were not returning to the State of New York because the child was enrolled in school in Florida at that time, this Court would still have jurisdiction. Adopting September 1, 2022, as the date that the child was no longer temporarily absent from the State of New York, the child would still be a resident of the State of New York on February 23, 2023, the date that the Petitioner commenced the instant proceedings, which is less than six months after September 1, 2022 (see DRL § 76[1][a]).
The Father testified credibly that he consistently believed his wife when she told him that she would be returning to the State of New York with their child. This was bolstered by her prior conduct of leaving New York with the child for eight months and then returning. Once he learned that she was pregnant by another man and that her older children had been returned to their father, he no longer believed her and took steps to commence the instant proceeding.
The Father's testimony, considered in the light most favorable to him and resolving all questions of credibility in his favor, clearly establishes that the Mother wrongfully removed their child from the State of New York, misled the Father about returning to the State of New York, and wrongfully retained their child in the State of Florida against the rights and wishes of the Father since April 12, 2022. Under these circumstances, Florida cannot be considered the child's home state due to the Mother's unjustifiable conduct. Based upon the foregoing, the Father has established a prima facie case for subject matter jurisdiction to be exercised by the State of New York in accordance with DRL § 76(1). Accordingly, the motion for judgment as a matter of law must be denied.
Respondent's Proof
The Respondent testified that she presently resides in Avon Park, Florida and has resided there for over one year with her daughter Isabella. The Mother testified, in blatant contradiction of her sworn affidavit of August 1, 2023, that when she left the marital home in April of 2022, it was, in fact, her intention to relocate with the child to the State of Florida and that she told her husband numerous times that she was staying in the State of Florida to "start a new life." She described the strained circumstances in the household before she left, and that she and the Father "were not on good terms" for several months. The Mother testified that because of this marital strain she "decided to move on." At paragraph 6 of her Affidavit in Opposition, sworn to on August 1, 2023, however, she stated "[I]t was not our intention to remain away." The Mother lacked candor, and at times, her testimony was self-serving and tailored to attempt to comply with the requirements of the UCCJEA; but several key concessions were made that are dispositive of this Court's exercise of jurisdiction.
The Mother conceded that she did not inform the Father of her intention to go to Florida until [*5]after she was already there with the child. The Mother conceded that she lost custody of her other two children after she took them to the State of Florida. She consented to the transfer of physical custody of those children because she relocated them to Florida without the consent of their father and testified that she "didn't know that [she] needed consent from him." The Mother conceded that she relocated all three children, including this child, without the consent of either father. When asked how many times she informed the Father of her new address, she answered "none. Zero." The Mother ultimately conceded that she unilaterally undertook a permanent relocation to the State of Florida without any input from the Father, stating "we were not speaking at the time." The Mother conceded that the Father was never informed that she was intending to relocate the child to a different State.
At no point in her testimony did the Mother claim that the Father consented to the relocation of the child to the State of Florida or to the continued presence of the child in the State of Florida.
Conclusions of Law
Subject Matter Jurisdiction
Under the UCCJEA, a parent cannot create the Court's jurisdiction through "unjustifiable conduct" (e.g. Schleger v. Stebelsky, 79 AD3d 1133 [2d Dept., 2010]; compare DRL § 76-g, with FSA § 61.521 [requiring a court to decline jurisdiction where a person seeking to invoke the jurisdiction of the court has engaged in unjustifiable conduct]). When a parent wrongfully removes or retains a child outside of their home state, such time will be considered a "temporary absence" and will not be includable in the home state calculation (see Matter of Felty v. Felty, 66 AD3d 64, 71 [2d Dept., 2009]; see also Matter of Joy v. Kutzuk, 99 AD3d 1049 [3d Dept., 2012]).
Based upon the credible evidence adduced at the hearing, the Mother knowingly, intentionally and wrongfully removed and withheld the child from the State of New York, her lawful home state, from April 12, 2022, until the commencement of these proceedings. As such, that period of wrongful removal and retention is deemed a temporary absence from the State of New York, and will not be counted towards establishing a new home state (see DRL § 75-a[7]; Matter of Joy v. Kutzuk, 99 AD3d 1049, 1050 [3d Dept., 2012]).
It is undisputed that the Respondent made the unilateral decision to relocate the child to the State of Florida and retain her there against the rights and wishes of the Father. Accordingly, such unjustifiable conduct cannot result in the state of Florida acquiring home state jurisdiction over this child for the purposes of making an initial custody determination (e.g. Matter of Krymko v. Krymko, 32 AD3d 941, 942 [2d Dept., 2006]). Contrary to the self-serving testimony of the Mother, the Court finds that the Mother knowingly misled the Father, over a period of many months, to believe that she and the child would be returning to the State of New York. These false statements of intent were for no other purpose than to placate the Father and afford her time to establish a new life in the State of Florida with the child (see generally Felty v. Felty, 66 AD3d 64 [2d Dept., 2009]). Based upon the foregoing, this Court must exercise subject matter jurisdiction over this initial custody determination.
Interim Order of Temporary Custody
In his motion for the Court to assume jurisdiction of this matter, the Father seeks "the immediate return of the child to New York pending trial," among other relief. Parenting time with the Father, with whom the child has resided for most of her life, is presumed to be in her best interests (e.g. Tanner v. Tanner, 35 AD3d 1102 [3d Dept., 2006]). The evidence adduced at the hearing raises very serious concerns regarding the Mother's candor and judgment, and her willingness to foster a loving relationship between the child and the Father (e.g. Watson v. Maragh, [*6]156 AD3d 801 [2d Dept., 2017]). Having held an evidentiary hearing and having had the opportunity to consider the testimony of the parties, the written submissions, and the best interests of the child, the Court is in possession of adequate relevant information necessary for a temporary custody determination (see generally Matter of Assini v. Assini, 11 AD3d 417 [2d Dept., 2004]).
Accordingly, the child will be permitted to complete the current school semester and celebrate Christmas with her Mother in the State of Florida. The parties will cooperate for the child to be returned to the State of New York no later than December 28, 2023. The Court is mindful that the Father has engaged a private attorney while the Mother has been assigned an attorney, having qualified financially for assigned counsel. Therefore, the Father shall pay the expenses of the child's return to the State of New York and the Father will have temporary physical custody of the child until the petitions have been adjudicated and a final order of custody is entered.
WHEREFORE, based upon the foregoing, and the Court, having searched the Statewide Registry of Orders of Protection, the Sex Offender Registry and the Family Court's child protective records, and having notified the parties and their counsel of the results of these searches; and the Court, having considered and relied upon the results of these searches in ordering the following terms of custody and visitation, and after due deliberation, it is hereby
ORDERED AND ADJUDGED that subject matter jurisdiction is properly laid in Sullivan County, New York, in accordance with DRL § 76, and that, in light of this Court's findings, the State of Florida has not acquired subject matter jurisdiction and would be obligated to decline jurisdiction (see F.S.A. §§ 61.514, 61.521[1]); and it is further
ORDERED AND ADJUDGED that, temporary physical custody of the child, Isabella RR., shall be transferred to the Petitioner, Miguel RR., on or before December 28, 2023, and thereafter the child's residence shall not be changed from the State of New York pending further proceedings; and it is further
ORDERED that, pending further proceedings, the parties shall share joint legal custody of the child and shall endeavor to reach a consensus on all issues of consequence. If the parties are unable to agree, Miguel RR. shall have final decision-making authority; and it is further
ORDERED that, pending further proceedings, Banesa GG. shall have reasonable and regular parenting time with the child if she is physically present in the State of New York. If the Mother is not physically present in the State of New York, she shall have regular and liberal contact with the child by phone or other electronic means, which may be on a daily basis; and it is further
ORDERED that the Mother's in person contact with the child may be supervised or unsupervised as the parties may reasonably agree; and it is further
ORDERED that, pending this Court's final custody determination, the parties may make such other, further and different parenting time arrangements as they see fit; and it is further
ORDERED that the parties shall appear before the Court for a conference on December 19, 2023, at 10:00 a.m. The Respondent is permitted to appear via Microsoft Teams if she is not physically present in the State of New York.
This shall constitute the Decision and Order of the Court.
Dated: November 21, 2023
E N T E R HON. JACQUELINE RICCIANI Family Court Judge

Footnotes

Footnote 1:Domestic Relations Law will hereinafter be referred to as "DRL."

Footnote 2:Florida Statutes Annotated will hereinafter be referred to as "FSA." The State of Florida has adopted the UCCJEA. 

Footnote 3:The Uniform Child Custody Jurisdiction and Enforcement Act will hereinafter be referred to as "UCCJEA."

Footnote 4:Throughout these proceedings, the Mother has never filed a petition for custody of this child in the State of Florida.

Footnote 5:The Mother has two other children from a prior relationship who also resided in the household.

Footnote 6:The other conduct that the Mother relies upon, however, had not been presented during the Father's testimony and therefore, is not part of the record.